**FILED**

OCT - 1 2007

**NANCY** MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA )
)
v. )                          Case: 1:07-mc-00386
)                          Assigned To : Lamberth, Royce C.
FARZAD DARUI, )                Assign. Date : 10/1/2007
)                          Description: Miscellaneous
Defendant. )
_____ )

### MOTION OF THE ISLAMIC CENTER OF WASHINGTON, D.C. TO QUASH THE SUBPOENA SERVED BY DEFENDANT FARZAD DARUI

The Islamic Center of Washington D.C. ("the Center"), by its undersigned counsel,

respectfully moves this Court for an order quashing the Criminal Rule 17(c) subpoena served on

the Center on September 11, 2007 by Defendant Farzad Darui.  The subpoena is fatally deficient

under Rule 17(c) of the Federal Rules of Criminal Procedure because it is not specific in its

requests; it seeks documents that are not relevant to the instant case and the sought documents

are not admissible at trial.  Moreover, it was made returnable to defense counsel's office in

violation of Rule 17(c).

The grounds for this motion are fully set forth in the accompanying Memorandum of

Law.

Respectfully submitted,

Williams & Connolly LLP

By: *Robert P. Watkins*
Richard M. Cooper (DC Bar 92817)
Robert P. Watkins (DC Bar 051839)
Ana C. Reyes (DC Bar 477354)

725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5000
(202) 434-5029 (fax)

Counsel for The Islamic Center of Washington D.C.

October 1, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2007, a true copy of the foregoing was served by First

Class Mail on the following:

Ronald Wesley Sharpe, Esq.
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C. 20530


Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA 20176

    Counsel for Defendant


           *Robert P. Watkins*
           Robert P. Watkins

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Misc. No. _____ RCL** |
| | ) | |
| **FARZAD DARUI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM IN SUPPORT OF MOTION OF
### THE ISLAMIC CENTER OF WASHINGTON, D.C. TO QUASH THE
### SUBPOENA SERVED BY DEFENDANT FARZAD DARUI

### BACKGROUND

On June 8, 2007, Defendant Farzad Darui ("Darui" or "Defendant"), who was employed

as the business manager of the Islamic of Washington D.C. ("the Center") from 1994 to 2006,

was charged in a seven-count indictment (Ex. A) with a scheme to defraud the Center and to

obtain money and property belonging to the Center by means of false and fraudulent pretenses,

representations and promises.

The scheme charged Darui with writing and issuing or causing checks to be written,

issued, and signed or causing falsely altered checks to be written on the Center's various bank

accounts or issuing checks belonging to the Center, which he used for his personal enrichment.

On August 8, 2007, this Court granted Defendant's motion to issue Rule 17(c) subpoenas

to certain specified individuals and entities. Among the entities listed in the Court's Order was

the Center. The motion was unopposed by the United States Attorney's Office; the Center, a

non-party to the criminal case, had no notice of Defendant's 17(c) motion and did not participate

in any proceedings leading to the Court's grant of the Order permitting Defendant to serve a

17(c) subpoena on the Center.

The subpoena (Ex. B) was served on the Center late in the afternoon of Tuesday,

September 11, 2007, demanding that the subpoenaed documents be returned to defense counsel's

office on September 12, 2007.

## ARGUMENT

I.    **THE SUBPOENA SHOULD BE QUASHED BECAUSE FEDERAL RULE OF CRIMINAL PROCEDURE 17(c) DOES NOT ALLOW BROAD PRETRIAL DISCOVERY.**

Rule 17(c) provides, in relevant part:

(c) Producing Documents and Objects.

(1) In General.  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2) Quashing or Modifying the Subpoena.  On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed.R.Crim.P. 17(c).

A Rule 17(c) subpoena seeks documents for use at trial.  The Supreme Court has held that a Rule

17(c) subpoena should be quashed as "unreasonable and oppressive" unless the party seeking

enforcement can satisfy certain criteria.  Courts have reaffirmed the limits of Rule 17(c)

subpoenas.  Recently, the U.S. District Court for the District of Columbia held that Rule 17(c) is

"not intended to provide a means of discovery for criminal cases," but was meant "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951)); *see United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) (*Cuthbertson I*) ("Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of

2

discovery in criminal cases found in Fed.R.Crim.P. 16."); *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) (Rule 17(c) "is not a discovery device, [it] confines a subpoena *duces tecum* to admissible evidence, [and] authorizes the quashing of the subpoena if it is 'unreasonable or oppressive.'") (footnotes omitted).

*United States v. Libby*, 432 F. Supp.2d 26, 30 (D.D.C. 2006) (alterations in original) (footnote

omitted).

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court set forth the criteria

for a party seeking enforcement of a Rule 17(c) subpoena to obtain documents before trial. The

Court concluded that under Rule 17(c) one must clear three hurdles: (1) relevancy;

(2) admissibility; and (3) specificity. *Id*. at 700, 703. *See also Libby*, 432 F. Supp.2d at 29-32.

Defendant in this case cannot clear any of the hurdles necessary to obtain the documents sought

in the Rule 17(c) subpoena served on the Center.

**II.     THE SUBPOENA SHOULD BE QUASHED BECAUSE IT LACKS SPECIFICITY AND IS AN IMPROPER ATTEMPT TO APPLY THE CIVIL DISCOVERY RULES TO A THIRD-PARTY SUBPOENA IN A CRIMINAL CASE.**

Of the many indications that Defendant's subpoena is an impermissible "fishing

expedition," perhaps the most glaring is Defendant's failure to identify specific documents.

Rather, he asks for categories of documents as if the subpoena were issued in a civil case. A

"test for enforcement [of a Rule 17(c) subpoena] is whether the subpoena constitutes a good faith

effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use

the rule as a discovery device." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980);

*see also United States v. Weissman*, No. 01 CR 529, 2002 WL 31875410, at *1 (S.D.N.Y.

Dec. 26, 2002) ("Rule 17(c) is not a means of discovery in a criminal trial."). Therefore,

defendants must detail, with substantial specificity, precisely what documents they seek. *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996) (specificity element requires "more than the

title of a document and conjecture as to its contents" (*quoting United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992)).

Eighteen of Defendant's nineteen document requests ignore the specificity requirement. Defendant's subpoena fails to identify specific documents, as required under *Nixon*. Instead, the subpoena reads like a civil discovery demand—with such sweeping phrases as "all documents concerning" and "includes, but is not limited to." Defendant casts his net as wide as possible, leaving no room to doubt that the subpoena is an impermissible "fishing expedition." *United States v. King*, 164 F.R.D. 542, 546 (D. Kan. 1996) ("Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of the sea's otherwise undiscoverable material in the small hope that something beneficial might rise to the surface."). Unlike the civil rules of discovery, in a criminal case "[t]he fact that [materials] are potentially relevant or may be admissible is not sufficient." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (*citing United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)). "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation." *In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997).

Defense counsel's use of the word "all" throughout the subpoena clearly indicates that it is being improperly used as a broad discovery device. Ignoring the specificity requirement, Defendant demands from the Center, for example:

14. All contracts and/or agreements with vendors, independent contractors, and service providers between January 1, 1984 and December 31, 2006; [a period of 22 years]

15. All monthly and year-end income and expense statements of The Islamic Center from January 1, 1990 to present; [a period of 17 years]

16.  <u>All accounting and financial audits</u> of The Islamic Center performed between January 1, 2000 and December 1, 2006; [a period of 6 years]

17.  Copies of <u>all records and receipts of charitable distributions</u> from all Islamic Center accounts disbursed between January 1, 2000 and December 31, 2006; [a period of 6 years]

18.  Copies of <u>all records and receipts of cash distribution, or distributions</u> by any other means, to charities, employees, independent contractors, service providers, and/or other individuals between January 1, 2000 and December 31, 2006; and [a period of 6 years]

19.  <u>All documents reflecting payment of Washington, D.C. sales tax</u> from The Islamic Center's Bookstore from January 1, 2000 to present. [a period of 6 years]

Ex. B (emphasis added).

The sheer breadth of such requests in time and scope undermine the important function of the specificity requirement to "allow the recipient of the subpoena to interpose specific objections to individual documents on the ground of admissibility and/or relevancy." *United States v. Moore*, No. 92 CR 200, 1992 WL 266938, at *1 (E.D.N.Y. Sept. 29, 1992). Absent even a perfunctory effort at satisfying the specificity requirement, it should be assumed that the subpoena was not made in good faith. *See United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."). Because Defendant's subpoena does not meet the specific requirement and is unreasonable and oppressive in scope and time, it should be quashed.

## III. THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DOCUMENTS SOUGHT ARE NOT RELEVANT TO THE CHARGES IN THE INDICTMENT NOR ADMISSIBLE AT TRIAL.

Compounding his failure to identify specific responsive documents, Defendant has also failed to show that any of the subpoenaed materials constitute relevant and admissible evidence.

5

*United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) ("Unlike the rule in civil actions, a

subpoena *duces tecum* in a criminal action is not intended for the purpose of discovery; the

document sought must at that time meet the tests of relevancy and admissibility."). A Rule 17(c)

subpoena that fails to identify admissible evidence cannot be enforced, and "[a] mere hope that

the documents, if produced, may contain evidence favorable to the defendant's case will not

suffice." *United States v. Rich*, No. 583 Cr. 579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7,

1984 omitted) (quotations omitted). *See also United States v. Cuthbertson*, 651 F.2d 189, 195

(3d Cir. 1981) (granting motion to quash Rule 17(c) subpoena seeking materials only for their

impeachment value); *United States v. Giampa*, No. S92 Cr. 437 (PKL), 1992 WL 296440, at *3

(S.D.N.Y. Oct. 7, 1992) (same). *See e.g., Nixon*, at 701.

The indictment charges that "defendant, Farzad Darui, did knowingly devise, participate

in and execute an artifice to defraud the Islamic Center of Washington, D.C. and to obtain money

and property belonging to the Islamic Center of Washington, D.C. by means of false and

fraudulent pretenses and promises." Ex. A, at. 4. The Court should evaluate Defendant's

attempts at discovery against the background of the charges in this indictment.

The subpoena[1] seeks the names of all persons employed by the Center along with their

pay stubs, time cards, W-4 Forms and tax withholdings from January, 1990 through

December 31, 2006 (a period of sixteen years). Nothing in the indictment charges that other

persons employed by the Center were part of Defendant's scheme to defraud the Center, nor does

it charge that Defendant mishandled employees' pay stubs, time cards, W-4 Forms or records of

employees' tax withholdings. Accordingly, those documents are not relevant or admissible.

---

[1] Subpoena Ex. B, requests 1 & 2.

The subpoena[2] next requests Islamic Center Newsletters and Bulletins for and the printing receipts for those Newsletters and Bulletins from January 1, 1990 through December 31, 2003 (a period of 13 years). There is nothing in the indictment that charges Defendant with mishandling the Center's Newsletter or Bulletin or any payments for the Bulletin or the Newsletter. The documents sought by this request are neither relevant nor admissible.

The subpoena[3] requests the names of all current and previous Islamic Center Board Members, their positions, and their committee memberships for period 1984–August 2007 and all documents relating to the Board members' qualifications, their nomination, retention on, and removal from, the Board from 1984–August 2007. Defendant has not, and can not, demonstrate that this information is relevant to the charges or admissible at trial.

The subpoena[4] seeks all agendas, minutes, notes, transcripts, and certified minutes and recordings of Islamic Center Board meetings from 1984-2006 and all documents relating to the hiring, retention, and payment of Williams & Connolly LLP. Defense counsel has not identified how minutes of the Center's Board meetings are admissible at trial. There can be no doubt that the Center's dealings with its attorneys, whether or not privileged, are not admissible in this criminal trial. These requests for documents pursuant to Rule 17(c) are burdensome, unreasonable and oppressive because they are neither relevant to the charges in the indictment nor admissible at trial.

According, the Islamic Center of Washington D.C. respectfully requests that Defendant's Rule 17(c) subpoena be quashed in its entirety.

---

[2]  Subpoena Ex. B, requests 3 & 4.

[3]  Subpoena Ex. B, requests 6-8.

[4]  Subpoena Ex. B, requests 9-13.

7

## IV.   THE SUBPOENA SHOULD BE QUASHED OR MODIFIED BECAUSE IT REQUIRES PRODUCTION OF DOCUMENTS AT DEFENSE COUNSEL'S OFFICE RATHER THAN IN COURT.

Defendant's subpoena provides:

> These items must be returned to our office no later than the close of business Wednesday, September 12, 2007.
>
> diGenova & Toensing
> 1776 K Street, N.W., #737
> Washington, D.C. 20006.

Rule 17(c)'s provisions are clear that the subpoenaed documents must be produced "in court before trial or before they are to be offered in evidence." Fed.R.Crim.P. 17(c). Rule 17(c) has no provision permitting documents to be produced at defense counsel's office.

The reason for the documents to be produced in court is so that "the court may permit the parties and their attorneys to inspect all or part of them." *Id.* Production of the documents at defense counsel's office does not allow the court to manage inspection of the documents. In cases where defense counsel attempted to have documents produced at defense counsel's office, those attempts have been soundly rejected. In *United States v. Najarian*, 164 F.R.D. 484, 487 (D. Minn. 1995), the court held:

> We also direct that the legend contained on each of the Subpoenas—to the effect that production can occur outside of the Court's presence—be deleted. As we read the plain language of Rule 17(c), the documents being subpoenaed are "to be produced before the court."

*See also*, *United States v. Agboola*, No. 00-100-JRT/FLN, 2001 WL 1640094, at *6 (D. Minn. Oct. 31, 2001). The same result should be obtained in the instant case. Defense counsel's attempt to have the subpoenaed documents produced at her office is contrary to Rule 17(c) and the case law. Accordingly,

Defendant's subpoena should be quashed or modified to have the documents produced in court

so that both parties can examine them.

Respectfully submitted,

Williams & Connolly LLP

By:  *Robert P. Watkins*

    Richard M. Cooper (DC Bar 92817)
    Robert P. Watkins (DC Bar 051839)
    Ana C. Reyes (D.C. Bar 477354)

725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5000
(202) 434-5029 (fax)

Counsel for The Islamic Center of Washington D.C.

October 1, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2007, a true copy of the foregoing was served by First

Class Mail on the following:

Ronald Wesley Sharpe, Esq.
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C. 20530

Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing
diGENOVA &  TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA  20176

Counsel for Defendant

Robert P. Watkins

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE NO. 06-MJ-434** |
| | : | |
| | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 1341 (Mail Fraud)** |
| **FARZAD DARUI** | : | **18 U.S.C. § 2314 (Interstate** |
| | : | **Transportation of Stolen Property)** |
| | : | **18 U.S.C. § 2 (Causing an Act to be Done)** |
| **Defendant.** | : | **22 D.C. Code §§ 3211(b)(2), 3212(a)** |
| | : | **(First Degree Theft)** |
| | : | **18 U.S.C. § 981(a)(1)(C) and** |
| | : | **28 U.S.C. § 2461(c) (Criminal Forfeiture)** |
| | : | |

**INDICTMENT**

The Grand Jury charges that:

**COUNTS ONE THROUGH FIVE**
**(MAIL FRAUD)**

Introduction

At all times material to this Indictment:

1. The Islamic Center of Washington, D.C. (the "Center") was dedicated in 1957 and is the

first mosque to be built in America's national capital. The Center serves as a regular place of

worship for thousands of Washington area Muslims, including many from the diplomatic

community. In addition, the Center provides charitable services for the Washington community,

-1-

07MS 386

**FILED**

OCT - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

including free Islamic study classes, Arabic and Qur'anic language classes and counseling services. The Center is located at 2551 Massachusetts Avenue, NW, Washington, D.C.

2. Defendant, FARZAD DARUI ("DARUI") was employed by the Center as the business manager from 1994 until August 2006. As business manager, defendant FARZAD DARUI was responsible for supervising and maintaining internal systems for accounts payable, accounts receivable, payroll, general ledger and financial reports and cash control. In addition, defendant FARZAD DARUI's duties included monitoring bank balances and financial statements, supervising audits and tax reports and preparing preliminary budgets. Defendant FARZAD DARUI's official duties also included manually preparing checks for payment of venders employed by the Center. Defendant FARZAD DARUI was terminated from his position in August 2006, after it was learned that he had stolen over $430,000 from the Center.

3. In addition to his employment at the Center, defendant FARZAD DARUI was the Resident Agent, Chief Executive Officer and Director of Zaal, Inc., an investment and management services company located in Falls Church, Virginia. The address on record at the State Corporation Commission for the Commonwealth of Virginia ("State Corporation Commission") of Zaal, Inc., is the same as that of defendant FARZAD DARUI's personal residence. That is, 3433 Malbrook Drive, Falls Church, Virginia.

4. Defendant FARZAD DARUI was also the Resident Agent and President of Blue Line Travel, Inc., a travel agency. The address on record at the State Corporation Commission of Blue Line Travel, Inc., is 5613 Leesburg Pike, Suite 21, Falls Church, Virginia.

5. On August 13, 2001, defendant FARZAD DARUI opened a checking account at United Bank in Arlington, Virginia in the name of Zaal, Inc., and listed the address of Zaal, Inc., as 3433

-2-

Malbrook Drive, Falls Church, Virginia (account number XXXX-4295, hereinafter "Zaal checking account"). Defendant FARZAD DARUI was the only authorized signatory for the Zaal checking account.

6. Defendant FARZAD DARUI also maintained a checking account on behalf of Blue Line Travel Inc., at First Union/Wachovia Bank (account number XXXXXXXXX5132, hereinafter "Blue Line checking account"). Defendant FARZAD DARUI along with his wife, Josefine Darui, were the only signatories for the Blue Line checking account.

### The Center's Bank Accounts

7. The Center owned and maintained the following bank accounts related to its operations:

a. Bank of America account number XXXXXXXXX2726 was an operating account established to segregate funds donated by the Kingdom of Saudi Arabia into a separate account (hereinafter, "Islamic Center special account"). Funds from this account were used to pay the Center's legitimate business expenses such as payroll, general maintenance costs, insurance and utilities.

b. Bank of America account number XXXXXXXXX5929 was an operating account established to pay the Center's legitimate administrative expenses (hereinafter, "Islamic Center administrative account").

c. Bank of America account number XXXXXXXXX4037 was an account established to receive charitable and other contributions from donors (hereinafter, "Islamic Center charity account").

8. Dr. Abdullah M. Khouj, the Director of the Center, (the "Director") was the only authorized signatory for the Islamic Center special account.

-3-

9.  Without the authorization or approval of the Director or anyone else at the Center, defendant FARZAD DARUI, added himself as an authorized signatory to the bank accounts maintained by the Center at Bank of America including the Islamic Center administrative account and the Islamic Center charity account.

10.  It was the policy and practice of the Center that only the Director authorized payments and signed checks written on the Islamic Center administrative account and the Islamic Center charity account.

<u>The Scheme and Artifice to Defraud</u>

11.  Between from at least October 2000, to in or about January 2006, in the District of Columbia and elsewhere, defendant FARZAD DARUI, did knowingly devise, participate in and execute a scheme and artifice to defraud the Islamic Center of Washington, D.C., and to obtain money and property belonging to the Islamic Center of Washington, D.C., by means of false and fraudulent pretenses, representations and promises.

· <u>Manner and Means</u>

12.  From in or about October 2000, to in or about January 2006, defendant FARZAD DARUI, without authorization, obtained numerous checks from the Islamic Center of Washington, D.C., by developing a scheme by which he would write and issue, or cause to be written, signed and issued, or falsely altered checks written on the Center's various bank accounts or checks belonging to the Center which he used for his personal enrichment.

13.  As the business manager for the Center, defendant FARZAD DARUI received mail and gathered invoices received from various vendors and creditors of the Center.  After doing so, defendant FARZAD DARUI wrote checks on various Islamic Center bank accounts that were made

-4-

payable to the respective vendors and creditors. Defendant FARZAD DARUI then took the checks

and the corresponding invoices to the Director for approval of payment. When payment of the

various invoices was approved, the Director would sign the checks. Thereafter, copies of the

invoices and the associated original checks would be made. Defendant FARZAD DARUI mailed

the checks, via the United States Postal Service, to the appropriate vendor or creditor.

14. It was part of the fraudulent scheme and artifice that instead of sending payment to the

Center's vendors and creditors, defendant FARZAD DARUI gained control of funds belonging to

the Center by altering the payee line of checks that had been endorsed by the Director and written

on the Islamic Center special account, the Islamic Center administrative account and the Islamic

Center charity account.

15. It was further part of the scheme and artifice that defendant FARZAD DARUI

substituted the original named payee with various versions of the names of Blue Line Travel, Inc.,

Zaal, Inc., and other businesses which he controlled and for which he was an authorized signatory.

16. It was further part of the scheme and artifice that defendant FARZAD DARUI negotiated

the altered checks and deposited funds stolen from the Center directly into either the Zaal checking

account or into the Blue Line checking account.

17. In was further a part of the scheme and artifice that defendant FARZAD DARUI

obtained checks payable to employees or contractors of the Center and, without authority from the

named payee on the checks, negotiated and deposited the checks directly into either the Zaal

checking account or into the Blue Line checking account.

18. Throughout the scheme, defendant FARZAD DARUI submitted duplicate invoices and

checks to the Director who endorsed the duplicate checks without realizing the payment was a

duplicate check for an invoice that supposedly had been paid.  Defendant FARZAD DARUI embezzled either the original endorsed check or the duplicate endorsed check in the aforementioned manner and sent the remaining endorsed check to the appropriate creditor or vendor thereby enabling defendant FARZAD DARUI to carry out and conceal his embezzlement of the Center's funds.

19.  In approximately February 2002, the mailing information for the Islamic Center special account was changed from the Center to a United States Post Office box in Washington, D.C.  This change of address was unknown and unauthorized by the Director.

20.  It was further part of the scheme and artifice that to conceal the fact that defendant FARZAD DARUI was altering the Center's checks and depositing the proceeds of the checks into bank accounts he controlled, defendant FARZAD DARUI rented a United States Post Office box in Washington, D.C., in the name of the Islamic Center without the knowledge or consent of the Director or anyone else at the Center (hereinafter, "P.O. Box 53188").

21.  It was further part of the scheme and artifice that to conceal his diversion of the Center's funds withdrawn from the Islamic Center special account, on the application for P.O. Box 53188, defendant FARZAD DARUI listed the address of the Islamic Center as that of his personal residence, that is, 3433 Malbrook Drive, Falls Church, Virginia.

22.  It was further part of the scheme and artifice that to conceal his diversion of the Center's funds withdrawn from the Islamic Center special account, defendant FARZAD DARUI caused Bank of America to mail, via the United States Postal Service, monthly statements and processed checks for that account to P.O. Box 53188.

23.  It was further part of the scheme and artifice that defendant FARZAD DARUI deposited the Center's checks directly into his Zaal checking account or into his Blue Line checking account.

-6-

During the course of the scheme from on or about October 2000 to on or about January 2006, defendant FARZAD DARUI stole in excess of $430,000 from the Center.

24. On or about each of the approximate dates listed below, in the District of Columbia and elsewhere, defendant FARZAD DARUI, for the purpose of executing the above-described scheme and artifice and attempting to do so, knowingly caused the following items to be delivered by mail by the United States Postal Service according to the directions thereon.

| Count | Approx. Date | Item | Mailed From | Mailed To |
|-------|-------------|------|-------------|-----------|
| 1 | 10-10-02 | Islamic Center special account monthly statement for the period 09-11-02 through 10-10-02 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 2 | 05-09-03 | Islamic Center special account monthly statement for the period 04-11-03 through 05-09-03 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 3 | 11-06-03 | Islamic Center special account monthly statement for the period 10-11-03 through 11-06-03 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |
| 4 | 03-11-04 | Islamic Center special account monthly statement for the period 02-07-04 through 03-11-04 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |

| 5 | 07-12-04 | Islamic Center special account monthly statement for the period 06-11-04 through 07-12-04 | Bank of America P.O. Box 25118 Tampa, FL 33622-5118 | Dr. Abdullah M Khouj Special for Islamic Ctr C/O Islamic Ctr P.O. Box 53188 Washington, D.C. 20009-9188 |

**(Mail Fraud and Causing an Act to be Done, in violation of
Title 18, United States Code, Sections 1341 and 2)**

## COUNT SIX
### (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)

25. Paragraphs 1 through 10 and 12 through 23 of the Indictment are incorporated herein by reference.

26. From on or about October 2000, to in or about January 2006, in the District of Columbia, the defendant FARZAD DARUI, did willfully and knowingly transport, transmit and transfer, in interstate commerce, that is, between the District of Columbia and the Commonwealth of Virginia, a security of the value of $5,000 or more, that is, checks as enumerated below having a combined value of $8,716.48, well knowing the same to have been stolen:

| Count | Check Dated | Check # /Original Payee | Inserted Payee | Amount |
|-------|-------------|-------------------------|----------------|--------|
| **6** | 04/30/2003 | 78436 / Washington Gas | B.L.T. Services Inc. | $4,516.48 |
| | 10/31/2003 | 78736 / Travelers | Blue Line Incorporated | $4,200.00 |

**(Interstate Transportation of Stolen Property and Causing an Act to be Done,
in violation of 18 United States Code, Sections 2314 and 2)**

## COUNT SEVEN
### (THEFT IN THE FIRST DEGREE)

27. Paragraphs 1 through 10 and 12 through 23 of the Indictment are incorporated herein by reference.

28. From between in or about October 2000, until in or about January 2006, in a continuing course of conduct, in the District of Columbia, defendant FARZAD DARUI wrongfully obtained over $430,000 in monies from the Islamic Center of Washington, D.C., with the intent to appropriate the property to his own use or to the use of third persons.

**(Theft in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3211(b)(2) and 3212(a))**

### FORFEITURE ALLEGATION

1. The violations alleged in Counts 1 through 5 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461.

2. Upon conviction of one or more of the offenses alleged in Counts 1 through 5 of this Indictment, defendant FARZAD DARUI shall forfeit to the United States pursuant to Title18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following:

MONEY JUDGMENT – $434,911.21, which represents a sum of money equal to an amount of proceeds obtained as a result of the defendant's mail fraud scheme, in violation of Title 18, United States Code, Section 1341.

By virtue of the offenses charged in Counts 1 through 5 of this Indictment, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) (as incorporated by Title 28, United States Code, Section 2461 (c)).

3.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

-10-

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. Section 853(p) as incorporated by 28 U.S.C.

Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above.

> **(Criminal Forfeiture, pursuant to Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C) and Title 21, United States Code, Section 853), and Fed. R. Crim. P. 32.2)**

A TRUE BILL


FOREPERSON


ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

-11-

AO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

FOR THE _____ DISTRICT OF _____ COLUMBIA

UNITED STATES

**v.**

FARZAD DARUI

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:   Crim. No. 1:07-cr-00149-RCL

TO:   The Islamic Center
2551 Massachusetts Ave., NW
Washington, DC  20008

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case.   This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| NOT APPLICABLE | N/A |
|  | DATE AND TIME |

☑   YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Attachment "A" and Attachment "B"

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| Nancy Mayer-Whittington | 8/28/07 |
| (By) Deputy Clerk | 8/27/07 |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

Victoria Toensing, diGenova & Toensing, 1776 K St. NW, #737, Washington, DC  20006
(202) 289-7701

0740386

**FILED**

OCT - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AO89 (Rev. 7/95) Subpoena in a Criminal Case (Reverse)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **RECEIVED BY SERVER** | | |
| **SERVED** | DATE | PLACE |

| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS |
|---|---|
| | ☐ YES   ☐ NO   AMOUNT $ _____ |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　　DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

ADDITIONAL INFORMATION

# ATTACHMENT "A"

## I.    DEFINITIONS

A.    For purposes of this Subpoena, the word "document" shall mean any written or graphic manner or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including but not limited to all writings and recordings, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata.

B.    The word "document" shall be deemed to include the original and any draft thereof, and any copy of an original or draft which differs in any respect from such original or draft.

# ATTACHMENT "B"

1.  Names of all persons employed by The Islamic Center from January, 1 1990 through December 31, 2006;

2.  All pay stubs, time cards, W-4 forms, employee files and records of payment of tax withholdings for all employees described in #1, above;

3.  All newsletters and bulletins from The Islamic Center from January 1, 1990 through December 31, 2003;

4.  All printing receipts, payment records, and typesetting receipts for all newsletters and bulletins from The Islamic Center from January 1, 1990 through December 31, 2003;

5.  All editions of the By-Laws of The Islamic Center in effect from January 1, 1984 through December 31, 2006;

6.  Names of all current Board Members, their respective Board positions, and current committee memberships;

7.  Names of all previous Board members, and their respective positions on the Board between January 1, 2000 and August 17, 2007;

8.  All documents[1] referencing the Board or its members, including, but not limited to, documents that discuss nominations or qualifications of Board members, or the removal or retention of Board members from January 1, 1984 through August 31, 2007;

9.  All agendas, minutes, notes, transcripts, certified minutes, and audio and video recordings of all Board meetings from January 1, 1984 through December 31, 2006;

10. All agendas, minutes, notes, transcripts, certified minutes, and audio and video recordings of all *emergency* Board meetings from January 1, 1984 through December 31, 2006;

11. Minutes or any other record reflecting the hiring of Williams & Connolly, LLP to represent the Islamic Center in Civil Action No.: 1:06-cv-01056-CMH-BRP, The Islamic Center of Washington, D.C. v. Farzad Darui;

12. Names of all persons attending any meeting to decide the Islamic Center's hiring of Williams &Connolly, LLP in the matter listed in # 11;

13. All documents reflecting the retention of Williams & Connolly, LLP, including, but not limited to, retainer agreements, billing records, and the payment of any legal bills;

---

[1] See Attachment A for definition of "document" as used herein.

14. All contracts and/or agreements with vendors, independent contractors, and service providers of The Islamic Center between January 1, 1984 and December 31, 2006, including, but not limited to, all facility maintenance and/or improvement vendors;

15. All monthly and year-end income and expense statements of The Islamic Center from January 1, 1990 to present;

16. All accounting and financial audits of The Islamic Center performed between January 1, 2000 and December 1, 2006 including, but not limited to, all audits performed by Hausler & Associates;

17. Copies of all records and receipts of charitable distributions from all Islamic Center accounts disbursed between January 1, 2000 and December 31, 2006;

18. Copies of all records and receipts of cash distribution, or distributions by any other means, to charities, employees, independent contractors, service providers, and/or other individuals between January 1, 2000 and December 31, 2006; and

19. All documents reflecting payment of Washington, D.C. sales tax from The Islamic Center's Bookstore from January 1, 2000 to present.


These items must be returned to our office no later than the close of business Wednesday, September 12, 2007.

diGenova & Toensing
1776 K St., NW, # 737
Washington, DC  20006