UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )  Misc. No 1:07-mc-00386 (RCL)<br>)<br>FARZAD DARUI, )<br>)<br>Defendant. )<br>_____) | |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH
### RULE 17(c) SUBPOENA TO THE ISLAMIC CENTER

### BACKGROUND

On September 11, 2007, the defendant, Farzad Darui, served a subpoena on the Islamic Center, pursuant to Federal Rule of Criminal Procedure 17(c). The Islamic Center (hereinafter, the "Center") filed a Motion to Quash the subpoena on October 1, 2007. Defendant Farzad Darui filed a Brief in Opposition to Motion to Quash Subpoena to the Islamic Center on October 15, 2007 (hereinafter, "Def. Br. In Opp.").[1] The Islamic Center, by its counsel, files this Reply Memorandum in Support of its Motion to Quash.

### ARGUMENT

The defendant seeks to expand impermissibly the scope of Rule 17(c) to provide a broad means of discovery in his criminal trial. Such expansion would directly contradict a well-settled principle in the federal courts: Rule 17(c) "was *not intended* to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (emphasis added). The jurisprudence surrounding Rule 17(c) balances a criminal defendant's interest in inspecting

---

[1] Although the defendant's counsel filed the Brief in Opposition on October 15, 2007, it was not served on the Center's counsel until the afternoon of October 16, 2007.

evidence with a third party's right to be free from "oppressive or unreasonable" invasions of privacy. Thus, unlike a criminal defendant's right to obtain "exculpatory material in the possession of the prosecution," Rule 17(c) affords a criminal defendant a *limited* means of obtaining evidence from third parties. *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981).

In *United States v. Nixon*, the Supreme Court was clear that a Rule 17(c) subpoena is enforceable only if it satisfies the three requirements of "(1) relevancy, (2) admissibility, [and] (3) specificity." *Nixon*, 418 U.S. at 700; *see also United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006). "[N]aked exculpatory material held by third parties" that does not comport with the requirements of *United States v. Nixon* "simply is not within the rule." *Cuthbertson*, 651 F.2d at 195.

The defendant seeks to use Rule 17(c) as a tool to obtain a range of materials through broad demands that do not comport with the requirements of *Nixon*. The Brief in Opposition mischaracterizes the limitations on the use of a Rule 17(c) subpoena and attempts to render the "hurdles" described in *Nixon* a form without substance. The subpoena's demands simply do not meet Rule 17(c)'s requirements of relevancy, admissibility, and specificity.

I.  **THE DOCUMENTS SOUGHT ARE NOT RELEVANT TO THE INDICTMENT OR TO A VIABLE DEFENSE.**

The defendant has failed to raise even a rational inference that the materials sought are relevant to the indictment or to a viable defense. "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents *mere speculation*." *In re Sealed Case*, 121 F.3d 729, 754–55 (D.C. Cir. 1997) (emphasis added).

To demonstrate relevance, a defendant must make a preliminary showing sufficient to permit a "rational inference" that the subpoena's requests are relevant to the indictment or to a viable defense. *Nixon*, 418 U.S. at 700. Contrary to the defendant's characterization that raising a "rational inference" of relevance requires only that the defendant "explain what he 'reasonably . . . believe[s] to be contained in the documents sought' and why that material *may be* relevant to his defense," Def. Br. In Opp. 5 (emphasis added) (*citing United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)),[2] *Nixon* does not set such a low bar.

In *Nixon*, the Supreme Court held that the special prosecutor had raised a "rational inference" of relevance by presenting "sworn testimony or statements of one or more of the participants in the conversations [recorded on many of the subpoenaed tapes] as to what was said at the time." 418 U.S. at 700. Likewise, the special prosecutor raised a "rational inference" that additional tapes (for which there was no sworn testimony) were relevant on the basis of "the identity of the participants [in the conversations] and the time and place of the conversations, taken in their total context." *Id*. Thus, *Nixon* requires a defendant to produce some evidence that, in its "total context," raises a "rational inference" that the documents sought are relevant to the indictment or to a viable defense. *Id*.

A defendant cannot raise a rational inference of relevance if the materials subpoenaed are purportedly relevant to a defense that is not viable. In *United States v. Rezaq*, this Court held that a defense is not "viable" and cannot form a basis for a Rule 17(c) subpoena if the defendant

---

[2] The defendant's reliance on *Noriega* for this proposition is misplaced. *Noriega* does not stand for the principle that a defendant raises a "rational inference" of relevancy by simply explaining what he "believe[s]" documents contain and why material "may be relevant." Def. Br. In Opp. 5. Read in its entirety, the quotation the defendant has paraphrased from *Noriega* explains that it is a "sure sign that the subpoena is being misused" if a defendant fails to "reasonably specify the information contained or believed to be contained in the documents sought." *Noriega*, 764 F. Supp. at 1493.

fails to produce evidence "to convince [the] court that [the] defense is not created out of thin air." 156 F.R.D. 514, 529 (D.D.C. 1994) (Lamberth, J.), *vacated in part on other grounds*, 899 F. Supp. 697 (D.D.C. 1995) (Lamberth, J.). Grounding the relevance of a Rule 17(c) subpoena on an unsubstantiated defense would require the court to "speculate" both "that [the] defense [is] grounded in reality," *id.* at 522, 528, and that the subpoenaed materials contain information relevant to the unsubstantiated defense.

Here, the defendant has not raised a rational inference that the subpoenaed materials are relevant to a viable defense to the indictment. Instead, the defendant, through counsel, levels unsubstantiated accusations at the Islamic Center and its Director and seeks to peruse a vast array of the Center's files on the basis of those accusations. He does not include a single exhibit to support his contention that "the funds he is accused of embezzling were . . . repayments for Darui's financial assistance in supporting Khouj's wives." Def. Br. In Opp. 10. As in *Rezaq*, there is no evidence demonstrating that the defendant's purported defense is not "created out of thin air." 156 F.R.D. at 522, 528. The defendant asks the Court "to speculate that his defense is grounded in reality, and then to open," *id.*, to his scrutiny the Center's files in the hope of finding evidence to support it. The law unequivocally forbids such an intrusion.

Unlike the subpoena at issue in *Nixon*, the purported relevance of defendant's subpoena is not supported with a single sworn statement,[3] a failure that was fatal in *Rezaq*. 156 F.R.D. at 522. This case is a stark contrast to *Nixon*, in which sworn testimony and statements supporting the relevance of the subpoenaed materials formed the backdrop for the Court's decision that the "total context" surrounding the subpoenaed materials raised a "rational inference" of relevance.

---

[3]    Notably, although the defendant has made serious accusations, including accusations of perjury by the Center's Director, the defendant has not made any of his accusatory statements under oath.

*Nixon*, 418 U.S. at 700. Because the defendant has in no way substantiated his purported defense, he has failed to raise even a "rational inference" of relevance to a viable defense to the indictment. Thus, the paragraphs of the subpoena that seek documents that are purportedly relevant to the defendant's unsupported defense (Subpoena ¶¶ 3–4, 14–18) fail *Nixon*'s relevancy requirement.

Furthermore, the defendant has failed to show that the names of *all* persons employed by the Islamic Center for eleven years and *all* the pay stubs, time cards, W-4 forms, employee files, and records of payments of withholdings for such employees (Subpoena ¶¶ 1–2) are relevant to any other potential defense to the indictment. According to the defendant, these documents will show that "actual employees received all payments to which they were entitled and none was diverted by Darui." Def. Br. In Opp. 9. Such a showing is entirely irrelevant to defending against the charges in the indictment, however. The indictment does not allege that any funds were stolen from any employees; nor does it allege that the employees were entitled to the funds. Rather, the indictment alleges that the defendant stole Center checks made out to the employees and negotiated and deposited them into Zaal and Blue Line Travel accounts. Whether the employees of the Center received the funds has no relevance to the fraud perpetrated by Darui on the Center.

Likewise, the defendant demands documents showing the membership of the Center's board and copies of its By-Laws (Subpoena ¶¶ 5–8), documents that are irrelevant to the indictment or to a defense to the indictment. The defendant claims that he seeks the information to show "who was authorized at various times to approve disbursements for the Center," Def. Br. In Opp. 10, however, the defendant fails to explain how such information is relevant to the charges against him. Documents listing the names of persons authorized to approve

disbursements do not show or imply that legal disbursements were made to the defendant or that the defendant did not engage in fraud.

The defendant does not even attempt to make a preliminary showing of the relevance of his remaining demands (Subpoena ¶¶ 9–13 & 19). Instead, the defendant unconvincingly claims that the Center's tentative agreement to produce certain documents demonstrates that those documents must be relevant. This claim is simply without logic. The defendant cannot unilaterally transform the Center's effort, through counsel, to compromise as an admission of relevance.

Because the defendant has not carried his burden of demonstrating that the documents demanded by the subpoena are relevant to a viable defense, the requested documents are not relevant and admissible; therefore, the subpoena should be quashed.

## II.  THE DOCUMENTS SOUGHT ARE NOT RELEVANT OR ADMISSIBLE TO IMPEACH POTENTIAL WITNESSES.

The defendant has failed to demonstrate that the documents sought are relevant or admissible as impeachment evidence. In *Nixon*, the seminal case describing the boundaries of Rule 17(c), the Supreme Court noted that "[g]enerally, the need for evidence to impeach witnesses is *in*sufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701 (emphasis added). "This is because the admissibility prong of Rule 17(c) cannot be fully assessed until the corresponding witness testifies at trial." *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988).

The defendant has not demonstrated that this case is an extraordinary one that warrants discovery of impeachment evidence prior to trial. Contrary to the defendant's allegation that the subpoenaed materials "relate[] to individuals who are virtually certain to testify," Def. Br. In Opp. 5, the materials requested from the Islamic Center cast a wide net over a large number of

persons, as to "many [of] whom it is unknown whether they will even be witnesses in [the] case." *Libby*, 432 F. Supp. 2d at 39.  For example, the defendant's requests are so broad as to include every former employee of the Islamic Center from January 1, 1995 to December 31, 2006 (Subpoena ¶ 2) and all current and former members of the Islamic Center's Board (Subpoena ¶ 2–3).

Given the breadth of the subpoena and the obvious uncertainty about whether some or all of those about whom documents are sought will testify, it is impossible to assess whether the subpoenaed materials would be impeachment evidence.  The Court should adhere to the general rule barring the use of Rule 17(c) to compel production of impeachment evidence.

### III. THE SUBPOENA'S REQUESTS ARE TOO OVERBROAD TO MEET *NIXON*'S SPECIFICITY REQUIREMENT.

The defendant has utterly disregarded the specificity requirement.  That requirement preserves the distinction between Rule 17(c) and civil discovery by "ensur[ing] that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." *Libby*, 432 F. Supp. 2d at 32 (quotations omitted).  Although the specificity requirement does not demand "exquisite specificity," *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989), if a defendant "cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a *sure sign* that the subpoena is being misused." *Libby*, 432 F. Supp. 2d at 31 (emphasis added) (*quoting Noriega*, 764 F. Supp. at 1493).

Here, even if the defendant had offered a viable defense, the breadth of the subpoena's requests would still fail the specificity requirement.  The subpoena's temporal scope is not tailored to a defense to the indictment.  The indictment alleges that the defendant engaged in

fraudulent conduct while he was the Business Manager of the Center, from 1994 to August 2006; yet, not a single one of the subpoena's paragraphs directly corresponds to this period of time.

Furthermore, the defendant does not, and could not, offer any justification as to why he seeks "all" of the documents that fall into eighteen of the nineteen categories in the subpoena (Subpoena ¶¶ 1–10, 12–19). Although the defendant claims that "each category of documents sought will demonstrate" the truth of the accusations in his Motion to Dismiss, Def. Br. In Opp. 8, he fails to identify which documents (or even which category or categories of documents) will substantiate which accusation.

Rather than providing adequate justifications to explain the breadth of the subpoena's requests, the defendant characterizes of Rule 17(c)'s prohibition on "fishing expeditions" as nothing more than a "hackneyed" expression. Def. Br. In Opp. 8. Instead of addressing the settled case law prohibiting "fishing expeditions," the defendant relies on a tangential footnote in an off-point case for the proposition that "one person's fishing expedition is another's exhaustive investigation." *Id.* (*citing United States v. Tomison*, 969 F. Supp. 587, 594 n.18 (E.D. Cal. 1997) (addressing whether the government has the right to bring a motion to quash a subpoena duces tecum served on a third party)). Because the lack of specificity in the subpoena is wholly unjustified, the subpoena should be quashed.

## CONCLUSION

For the foregoing reasons, the Islamic Center respectfully requests that the Court grant the motion to quash or, in the alternative, to modify, the subpoena served on him by the defendant.

Respectfully submitted,

Williams & Connolly LLP

By: *Robert P. Watkins*
Richard M. Cooper (DC Bar 92817)
Robert P. Watkins (DC Bar 051839)
Ana C. Reyes (DC Bar 477354)

725 Twelfth Street, N.W.
Washington, DC 20005-5901
(202) 434-5000
(202) 434-5029 (fax)

*Counsel for the Islamic Center*

Dated: October 24, 2007

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2007, a true copy of the foregoing was served electronically upon on the following:

Ronald Wesley Sharpe, Esq.
U.S. ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C. 20530

Victoria Toensing, Esq.
Joseph diGenova, Esq.
Brady Toensing
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006

Aaron S. Book, Esq.
Steven T. Webster, Esq.
WEBSTER BOOK LLP
1 North King Street
Leesburg, VA  20176

*Counsel for Defendant*

                                                      /s/ Robert P. Watkins
                                                      Robert P. Watkins